UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| MARY HERIOT, individually, and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>AMERICARE INC., a Nevada corporation<br><br>　　　　　　　Defendant. | NO.　3:20-cv-04178-MGL<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

　　　　Plaintiff Mary Heriot ("Plaintiff Heriot" or "Heriot") brings this Class Action Complaint and Demand for Jury Trial against Defendant Americare Inc. ("Defendant Americare" or "Americare") to stop the Defendant from violating the Telephone Consumer Protection Act and the South Carolina Telephone Privacy Protection Act by making pre-recorded telemarketing calls, including telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"), and to consumers who expressly requested to Defendant for the calls to stop yet continued to receive calls from Defendant. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Heriot, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

　　　　1.　　　Plaintiff Mary Heriot is a resident of Mayesville, South Carolina.

　　　　2.　　　Defendant Americare is a Nevada registered corporation headquartered in Las Vegas, Nevada.  Defendant Americare conducts business throughout this District, South Carolina and throughout the U.S.

## JURISDICTION AND VENUE

1

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant does business in this District and the wrongful conduct giving rise to this case was directed to this District. Venue is proper in this District because Plaintiff is located in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. Americare produces homeopathic human growth hormone ("HGH") products that are marketed and sold to consumers.[3]

17. As part of its business practice, Americare places solicitation calls to past consumers in order to solicit them to purchase more of the same items those consumers purchased in the past, or new products that Americare is selling.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.facebook.com/pg/AmericareHealthNutrition/about/?ref=page_internal

18. Americare has a history of telemarketing debacles. Americare and its owner Mario Gonzalez entered into a consent judgment with the State of Iowa that Americare and its owner are permanently restrained and enjoined from engaging in telemarketing of any health-or-nutrition related product to Iowa residents.[4]

19. Defendant Americare currently places pre-recorded calls to consumers, despite having never acquired the necessary consent needed to place such calls.

20. These calls are being placed without express written consent from consumers who are registered on the DNC and who do not have an existing business relationship with the Defendant.

21. Furthermore, the Defendant lacks a sufficient stop call system that results in the Defendant continuing to call consumers who have previously requested that the calls stop.

22. For example, in Plaintiff Heriot's case, Defendant placed multiple calls to her number which is registered on the DNC, despite her requesting that Defendant stop calling her on multiple calls.

23. In response to these calls, Plaintiff Heriot files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act and the South Carolina Telephone Privacy Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

**AMERICARE PLACES UNSOLICITED SALES CALLS TO CONSUMERS, INCLUDING PRE-RECORDED CALLS, EVEN AFTER THE CONSUMER HAS DEMANDED THAT THE CALLS STOP**

24. Americare places solicitation calls to consumers who have ordered its products in the past in order to generate new business.

---

[4] https://www.iowaattorneygeneral.gov/media/cms/Americare_Consent_Judgment_7_17_14_E721AB0E6AC0F.pdf

25.     Former employees have made reference to using calling technology for calling consumers *en masse.*[5]

26.     Consumers do not consent to receive prerecorded calls as part of their interacting with the website or purchasing products or services from Defendant.

27.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

28.     Yet in violation of this rule, Defendant fails to obtain any express written consent prior to placing pre-recorded solicitation calls to telephone numbers such as those of Plaintiff Heriot.

29.     Consumers have complained online about the incessant calls they receive from Defendant. For example:

- "wanted my credit card number to charge $499 per year for CBD oil which he claimed I purchased already. When I refused to give info he became abusive on phone. Third call from him. mostly at nite when I'm sleeping. This time at work on personal phone. I clicked 'block', hope it works"[6]
- "This guy calls and tries to harass me into purchasing supplements for my health at a year's supply. When I said it was too costly he wouldn't hear if it and wanted my credit card. Lately I've been getting weird comments and music on my voicemail as if in retaliation. Is there no stopping this? It's Sunday night and they are calling!"[7]
- "He asked lots of questions about my health and claimes HGH will cure all of them. Every time I hung up on him he calls back(5 or 6 times). I didn't answer the last one. I think he left a voicemail but I haven't heard it. When I told him I was not interested in what he was selling he asked what was wrong with me and who had hurt me. I gave his phone number to NomoRobo to block the calls. He said his name is Bryant and gave me the phone number I gave you. I couldn't get rid of

---

[5] https://www.indeed.com/cmp/Americare-Health/reviews
[6] https://www.callercenter.com/702-933-4966.html
[7] *Id.*

- him short of hanging up on him and not answering when he called back. Fedup. N.C."[8]

- "Has been calling me for days, weeks. I have someone answering phone for me and he was very rude to her and demanded to speak with me. Was told I was not available and would not speak with him. He said he must speak with only me. He said I had purchased something from them. Then said, 'You're not the end person of God'. My lady speaking for me said, 'Maybe I have her POW' and hung up. He is extremely annoying and rude. Probably preying on older senior citizens."[9]

- "This company does not take no for an answer. You can't buy anything without it being a year supply-scam…"[10]

- "I am a 70 year old woman from Oregon... I made the mistake of trying one of this companies products and after 4 months of the product not working for me I was willing to let it go. Lesson learned, but noo this company would not let it go. I was berated and am still being harassed. I was told I did not use product right. I only wanted a quick fix… I was talked down to told I had no choice but to try another product and when I said no thank you have been bombarded with call from to most obnoxious and disrespectful man I have ever spoken to. I said I was hanging up and did. I was again called in a very threatening manner and have been getting calls daily. They will not take me off their list. The man has threatened me in numerous ways. I would fear for my safety if he was not calling from another state. Where is the limit companies are allowed to go. Beware. One more call and I will take this to the attorney general and file harassment charges."[11]

## PLAINTIFF HERIOT'S ALLEGATIONS

30. Plaintiff Heriot registered her landline phone number on the DNC on July 1, 2003.

31. Plaintiff's phone number begins with South Carolina area code 803.

32. Plaintiff Heriot's phone number is not associated with a business and is used for personal use only.

33. In approximately mid-2018, Plaintiff Heriot purchased an HGH product from Americare using the website Americarenow.com.

---

[8] *Id.*
[9] *Id.*
[10] https://findwhocallsyou.com/7029334966?CallerInfo
[11] https://www.bbb.org/us/nv/las-vegas/profile/health-products/americare-inc-1086-64603/customer-reviews

34.     At no time did Plaintiff consent to receive pre-recorded or other telemarketing calls.

35.     One month after purchasing a HGH product from Americarenow.com, Plaintiff received a telemarketing call asking if she wanted to place another order.

36.     Plaintiff told the agent that she did not feel that the product was effective and said that she would not make another purchase from Americare.

37.     Despite this, Plaintiff continued to receive solicitation calls from the Defendant.

38.     In the calls that followed, Plaintiff specifically told the agents to stop calling her on numerous occasions.

39.     Since late-2019, Plaintiff has received a steady barrage of solicitation calls from Defendant Americare.

40.     Unable to get the calls stopped, Plaintiff Heriot stopped answering the calls.

41.     At times when the calls were not answered, Plaintiff received pre-recorded voice messages in her voicemail from Defendant stating "Hold on, we'll dial your number" or similar language and then the prerecorded message would end.

42.     These pre-recorded messages did not contain an opt-out message for the consumer to follow to opt out of future calls, or an opt-out mechanism that the consumer can use to automatically opt-out of future calls. The pre-recorded message system also did not specify that it was calling for solicitation purposes, leave the name, address, and telephone number of the person making the call, or provide a phone number to make a do not call request.

43.     Other times, the voicemail messages were blank.

44.     Plaintiff received multiple phone calls from Defendant more than 18 months from the time when she purchased an HGH product.

45.     For example, Plaintiff received the following phone calls from Defendant using phone number 702-933-4966:

- October 13, 2020 – 9:40 PM

- October 14, 2020 – 3:30 PM, 5:13 PM and 5:17 PM
- October 15, 2020 – 3:21 PM
- October 16, 2020 – 4:11 PM
- October 17, 2020 – 5:02 PM and 5:10 PM
- October 19, 2020 – 7:24 PM
- October 20, 2020 – 3:17 PM
- October 21, 2020 – 5:59 PM
- October 26, 2020 – 3:46 PM

46. The unauthorized solicitation telephone calls that Plaintiff received from Americare, as alleged herein, have harmed Plaintiff Heriot in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

47. The calls also wasted Plaintiff's time, as, among other things, Plaintiff spent time telling agents to stop calling and listening to voicemails.

48. Seeking redress for these injuries, Plaintiff Heriot, on behalf of herself and Classes of similarly situated individuals, bring suit under the TCPA and SCTPPA.

## CLASS ALLEGATIONS

49. Plaintiff Heriot brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called (2) using a pre-recorded voice message, and (3) for whom the Defendant claim (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiff, or (b) they obtained the person's number in the same manner as Defendant obtained Plaintiff's number.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claim they supposedly obtained prior express

written consent to call Plaintiff, or (b) they obtained the person's number in the same manner as Defendant obtained Plaintiff's number.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.

**SCTPPA Class**: All persons in South Carolina who from four years prior to the filing of this action through class certification, were (1) called on their South Carolina area code (803, 839, 843, 854, or 864) phone number; (2) by Defendant; (3) (a) at a phone number registered with the National Do Not Call Registry, (b) using a prerecorded voice message without an opt out message or opt out mechanism, or (c) without identifying the phone number and physical address for Defendant's home office.

50.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Heriot anticipates the need to amend the Class definitions following appropriate discovery.

51.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

52.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendant Americare placed pre-recorded voice message calls to Plaintiff Heriot and members of the Pre-recorded Class without first obtaining consent to make the calls;

(b) whether Defendant Americare systematically made multiple calls to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to make the calls;

(c) whether Defendant Americare's calls to Plaintiff and other consumers were made for telemarketing purposes;

(d) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(e) whether Defendant's conduct constitutes a violation of the TCPA;

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

(h) whether the Defendant called persons in South Carolina in violation of the South Carolina Telephone Privacy Protection Act.

53. **Adequate Representation**: Plaintiff Heriot will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Heriot has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Heriot and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Heriot nor her counsel have any interest adverse to the Classes.

54. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Heriot.

Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Heriot and the Pre-recorded No Consent Class)

55. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

56. Defendant and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff Heriot and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

57. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Heriot and the other members of the Pre-recorded No Consent Class.

58. Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendant's conduct, Plaintiff Heriot and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Heriot and the Do Not Registry Class)

59. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

60. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

61. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

62. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Heriot and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

63. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Heriot and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

64. As a result of Defendant's conduct as alleged herein, Plaintiff Heriot and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

65. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**THIRD CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Heriot and the Internal Do Not Registry Class)**

66. Plaintiff repeats and realleges the prior paragraphs of this Complaint and

incorporates them by reference herein.

67.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose

> behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

68. Defendant or their agents made marketing calls to Plaintiff Heriot and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

69. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

70. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff Heriot and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**FOURTH CAUSE OF ACTION**
**South Carolina Telephone Privacy Protection Act**
**(Violation S.C. Code § 37-21)**
**(On Behalf of the Plaintiff and the SCTPPA Class)**

71. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

72. The SCTPPA defines a telephone solicitation as "the initiation of a call, or a text or media message sent, to a natural person's residence in the State, or to a wireless telephone

with a South Carolina area code, for the purpose of offering or advertising a property, good, or service." S.C. Code § 37-21-20

73.     Consent: In order to make a telephone solicitation to a South Carolina area code phone number, the caller must have either (1) the consumer's prior express invitation or permission as evidenced by a signed or electronically signed written agreement stating that the person agrees to be contacted by or on behalf of a specific party and including the telephone number to which they may be placed (2) Establish Business Relationship[12] (3) or a personal relationship.[13]

74.     Defendants did not have the written consent, established business relationship, or a personal relationship with the Plaintiff or the putative SCTTPA class.[14]

75.     Disclosure of certain information at the outset of and during a telephone solicitation: Callers are required to disclose certain information at the outset of and during a telephone solicitation including their first and last name, a telephone number and address at which the telephone solicitors may be contacted, the purpose of the telephone solicitation, and a

---

[12] "Established business relationship" means a relationship between the consumer and the person on whose behalf the telephone solicitation call is being made based on the consumer's:(a) purchase from, or transaction with, the person on whose behalf the telephone solicitation is being made within the eighteen months immediately preceding the solicitation date; or(b) inquiry or application regarding a property, good, or service offered by the person on whose behalf the telephone solicitation is being made within the three months immediately preceding the solicitation date. S.C. Code § 37-21-20

[13] "Personal relationship" means the relationship between a telephone solicitor making a telephone solicitation and a family member, friend, or acquaintance of that telephone solicitor." S.C. Code § 37-21-20

[14] Anyone that Defendants claim they have either written consent, established business relationship, or a personal relationship would not be class members by definition.

reasonable and good-faith estimate of the total costs to purchase, receive, or use, and the quantity of any goods or services that are subject of the solicitation or offer.[15]

76. The agent that called Plaintiff did not provide his last name as part of his disclosure or an address to be contacted, or any estimates of the costs of his service at the time of the call.

77. <u>Prerecorded identifications and opt-out messages</u>: The telephone solicitor leaving a prerecorded voice must "play a prerecorded identification and ***opt-out message*** that is limited to disclosing that the call was for telephone solicitation purposes and states the name and telephone number of the person on whose behalf the telephone solicitation call is being made, and a telephone number for such person that permits the consumer to make a do-not-call request during regular business hours" or "an automated, interactive voice and/or key press-activated

---

[15] Section 37-21-40 - Disclosure of certain information at the outset of and during a telephone solicitation: (A) At the outset of a telephone solicitation, a telephone solicitor shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made and promptly disclose to the consumer the following information:(1) a telephone number and address at which the telephone solicitor may be contacted;(2) the purpose of the telephone solicitation;(3) that no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered. This disclosure must be made before or in conjunction with the description of the prize to the consumer. If requested by that person, the telephone solicitor must disclose the no purchase/no payment entry method for the prize promotion; and(4) the option to be added to the telephone solicitor's in-house 'do not call' list if the consumer requests being added to such list, confirmation that the consumer's name and telephone number will be placed on such list.(B) At the time of solicitation or offering, the telephone solicitor shall further disclose:(1) a reasonable and good-faith estimate of the total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the solicitation or offer; and(2) if the telephone solicitor, or the person on whose behalf the telephone solicitation is being made, has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the consumer of that policy.(C) If the consumer indicates that he does not want to hear the offer, the telephone solicitor must immediately end the contact. *S.C. Code § 37-21-40*

opt-out mechanism that enables the consumer to make a do-not-call request prior to terminating the call."[16]

78.     Defendants' prerecorded messages did not contain any form of opt-out message or automated opt-out mechanism on their pre-recorded calls.

79.     <u>Unwanted Calls to Phone Numbers Registered on the Do Not Call Registry</u>: A telephone solicitor may not initiate, or cause to be initiated, a telephone solicitation to a telephone number on the National Do Not Call registry.[17]

---

[16] <u>Section 37-21-60 - Prerecorded identifications and opt-out messages</u>: When a live telephone solicitor is not available to speak with the consumer answering a telephone solicitation call within two seconds of the completed greeting, the telephone solicitor shall: (1) play a prerecorded identification and opt-out message that is limited to disclosing that the call was for telephone solicitation purposes and states the name and telephone number of the person on whose behalf the telephone solicitation call is being made, and a telephone number for such person that permits the consumer to make a do-not-call request during regular business hours; provided that, such telephone number may not be a 900 number or any other number for which charges exceed local or long distance transmission charges; and (2) an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the consumer to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism. When the consumer elects to opt-out using such mechanism, the mechanism must automatically record the consumer's number to the telephone solicitor's in-house do-not-call list and immediately terminate the call.

[17] Unwanted telephone solicitations; Do Not Call Registry; affirmative defense. (A) A person may not initiate, or cause to be initiated, a telephone solicitation directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made. This statement may be made to a telephone solicitor or to the person on whose behalf the telephone solicitation is being made if that person is different from the telephone solicitor. Any request not to receive telephone solicitations must be honored for at least five years from the time the request is made. (B) A telephone solicitor may not initiate, or cause to be initiated, a telephone solicitation to a telephone number on the National Do Not Call Registry maintained by the federal government pursuant to the Telemarketing Sales Rule, 16 C.F.R. Part 310, and 47 C.F.R. Section 64.1200. (C) It is an affirmative defense in any action brought pursuant to Section 37-21-80 or 37-21-90 for a violation of this section that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitation in violation of this section, including using in accordance with applicable federal regulations a version of the National Do Not Call Registry obtained from the administrator of the registry no more than thirty-one days prior to the date a telephone solicitation is made. SC Code § 37-21-70 (2019)

80. Defendants called telephone numbers like Plaintiff's whose phone number is registered on the DNC and who did not give consent to be called by Defendants.

81. <u>Remedies</u>: "A person who is aggrieved by a violation of this chapter is entitled to initiate an action to enjoin the violation and to recover actual losses in addition to damages in the amount of one thousand dollars for each violation."[18]

82. If the court finds a willful violation, the court may, in its discretion, increase the amount of the award to an amount not exceeding five thousand dollars for each violation.[19]

83. Notwithstanding another provision of law, in addition to any damages awarded, the person initiating the action for a violation of this chapter may be awarded reasonable attorneys' fees and court costs.[20]

84. Defendants and/or its agents made unwanted solicitation telephone calls to phone numbers belonging to Plaintiff and the other members of the SCTPPA Class.

85. These solicitation calls were made *en masse* without the consent of the Plaintiff and the other members of the SCTPPA Class to receive such solicitation calls.

---

[18] Section 37-21-80 - Remedies; injunctions: (A) A person who is aggrieved by a violation of this chapter is entitled to initiate an action to enjoin the violation and to recover actual losses in addition to damages in the amount of one thousand dollars for each violation.
(B) If the court finds a wilful violation, the court may, in its discretion, increase the amount of the award to an amount not exceeding five thousand dollars for each violation.
(C) Notwithstanding another provision of law, in addition to any damages awarded, the person initiating the action for a violation of this chapter may be awarded reasonable attorneys' fees and court costs. (D) An action for damages, attorneys' fees, and costs brought pursuant to this section may be filed in an appropriate circuit court or municipal or magistrates court so long as the amount claimed does not exceed the jurisdictional limits as applicable. An action brought pursuant to this section that includes a request for an injunction must be filed in an appropriate circuit court.
(E) It must be a defense to any action brought under this section that the violation was not intentional and resulted from a bona fide error.
[19] *Id.*
[20] *Id.*

86. Defendants have, therefore, violated S.C. Code § 37-21-70. As a result of Defendants' conduct, Plaintiff and the other members of the SCTPPA Class are each entitled to a minimum of $1,000 in damages, and up to $5,000 in damages, for each violation and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Heriot individually and on behalf of the Classes, prays for the following relief:

87. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Heriot as the representative of the Classes; and appointing her attorneys as Class Counsel;

88. An award of actual and/or statutory damages and costs;

89. An aware of attorney's fees;

90. An order declaring that Defendant's actions, as set out above, violate the TCPA;

91. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

92. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Heriot requests a jury trial.

DATED this 2nd day of December, 2020.

By: /s/ *V. Elizabeth Wright*
V. Elizabeth Wright (SC Bar No. 10699)
V. Elizabeth Wright Law Firm, LLC
217 E. Park Avenue
Greenville, SC 29601
Telephone: (864) 325-5281
bethwrightattorney@gmail.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.

400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*\*Pro Hac Vice motion forthcoming*